685 S.E.2d 237

STATE of West Virginia, Plaintiff Below, Appellee

v.

Richard MALFREGEOT, Defendant Below, Appellant.

No. 34496.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 2, 2009.

Decided Oct. 9, 2009.

Thomas Dyer, Esq., Mary Guy Dyer, Esq., Dyer Law Offices, Clarksburg, for Appellant.

James Armstrong, Esq., Assistant Prosecuting Attorney, Harrison County Prosecuting Attorney's Office, Clarksburg, for Appellee.

PER CURIAM:

This case is before the Court upon an appeal of the November 5, 2007, order of the Circuit Court of Harrison County, which found the appellant, Richard Malfregeot, guilty of the misdemeanor offense of stalking/harassment in violation of W.Va.Code § 61–2–9a(a) (2001).[1] The appellant was sentenced to six months incarceration and fined $500.00; however, within the same order, the circuit court suspended the appellant's sentence and fine and placed him on two years of unsupervised probation. The appellant argues that the circuit court erred in finding that the evidence was sufficient to convict him of the alleged offense and that it further erred in its application of the law to the facts. Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law, we are of the opinion that the circuit court did not commit reversible error and accordingly, affirm the decision below.

---

1. W.Va.Code § 61–2–9a(a) provides:

Any person who willfully and repeatedly follows and harasses a person with whom he or she has or in the past has had or with whom he or she seeks to establish a personal or social relationship, whether or not the intention is reciprocated, a member of that person's immediate family, his or her current social companion, his or her professional counselor or attorney, is guilty of a misdemeanor and, upon conviction thereof, shall be incarcerated in the county or regional jail for not more than six months or fined not more than one thousand dollars, or both.

The West Virginia Legislature amended W.Va. Code § 61–2–9a in 2008, but such amendment has no impact on our decision as the appellant was convicted on November 5, 2007, by order of the Circuit Court of Harrison County.

## I.

### FACTS

The appellant, Richard Malfregeot, was employed by the Harrison County Board of Education as a teacher and coach at Bridgeport Middle School (hereinafter, "BMS") during the 2005–2006 academic year. During that year, the appellant met L.L.,[2] a thirteen-year-old female, while traveling on a school bus to a BMS football game. The appellant, seated directly behind L.L. and her best friend C.E., engaged L.L. in conversation. Following the bus trip, the appellant would often see L.L. at BMS and would talk and joke with her.

As the academic year progressed, contact between the appellant and L.L. significantly increased as the appellant began to speak with her at BMS multiple times per day. Many of these encounters occurred at L.L.'s locker. According to the appellant, L.L.'s locker was located within an area he was responsible for monitoring as a part of his duties as a teacher. However, L.L. testified at the appellant's trial that BMS is divided into different sections or "pods" and that her locker was located in pod 8–2, while the appellant's classroom was located in pod 8–1. L.L. stated that in spite of the fact that the appellant's classroom was in a different part of the school, that between classes when students went to their lockers, the appellant would be standing within five feet of her locker waiting to talk with her on a daily basis. In addition, L.L. and other witnesses testified that other teachers did not visit students' lockers on a daily basis. During these encounters, the appellant did not discuss academic or school-related topics with L.L. Instead, the appellant discussed personal matters such as L.L.'s appearance and very often told L.L. how lucky her boyfriend was to have her as a girlfriend. Trial testimony also revealed that the discussion of such personal matters between teachers and students at BMS was an uncommon occurrence.

L.L. further testified that the appellant would walk around the school in the morning to exercise and would often invite her to walk with him. While L.L. repeatedly denied the invitation, the record does not indicate that the appellant extended a similar invitation to any other student. L.L. also stated that the appellant stopped by her lunch table three or four times per week, every week, to talk with her and the other students who were present. In addition, she said that the appellant would on occasion stop by her gym class to visit with her.

The contact between the appellant and L.L. was not limited to verbal communication. The appellant acknowledged that on several occasions he placed his arm around L.L. and had held her hand. L.L. testified that such physical contact made her uncomfortable and that she would shrug her shoulders in an attempt to discourage the appellant from touching her. She further testified that on one occasion the appellant rubbed her shoulders and played with her hair while she sat in a computer lab at the school. She said that she did not tell the appellant that his conduct made her feel uncomfortable because he was a teacher, an authority figure, and that she felt embarrassed and intimidated by the age difference between the two.

Another such encounter between the appellant and L.L. occurred when the appellant summoned L.L. to his classroom to type a one-paragraph letter pertaining to the football team, of which the appellant was a coach. While there is no direct allegation that any inappropriate physical contact occurred during this instance, the appellant had effectively arranged for the two to be alone in his classroom in spite of the fact that L.L. was not enrolled as a student in any class taught by the appellant at BMS. During the appellant's trial, the BMS principal testified that she did not encourage teachers to be alone in the classroom with students.

L.L. further testified that the appellant had displayed photographs of her on a bulletin board at the front of his classroom. The appellant contended that some of the photo-

---

**2.** Our customary practice in cases involving minors is to refer to the children by their initials rather than by their full names. *See, e.g., In re* *Cesar L.,* 221 W.Va. 249, 252 n. 1, 654 S.E.2d 373, 376 n. 1 (2007).

graphs had other students pictured in addition to L.L.; however, the one common characteristic among them was that *all* of the photographs had L.L. in them. The appellant did not personally take all of the photographs, but he had nonetheless obtained several photographs of L.L., one of which revealed her dressed in pajama-like clothing at a slumber party.

L.L. stated that when she learned of the photographs hanging in the appellant's classroom she became upset. She said that she had not given the appellant permission to display the photographs and she immediately asked him to remove them from his wall. The appellant, however, refused. In fact, L.L. stated that she asked the appellant on approximately five occasions to remove the photographs; each time he refused. The photographs were eventually removed by another student. At trial, the principal of BMS testified that if a teacher is asked to remove photographs from the wall, "then they should come down."

Another encounter between the appellant and L.L. occurred on Sunday, April 2, 2006, when the appellant was at BMS working at a concession stand for a BMS athletic event. M.L., the younger brother of L.L., and several of his friends were in attendance and wished to play football. Due to the fact that they did not have a football, M.L. asked the appellant if he could let them use one of the school's balls. The appellant told M.L. that he would have to first speak with L.L. to be sure it was alright for him to provide the football. The appellant then asked M.L. for L.L.'s personal cell phone number and called her. L.L. did not answer the phone call, and the appellant left a voice message stating, "L.L., D.G. is waiting for you at Bridgeport Middle School." D.G. was another student at BMS, and the appellant was aware that L.L. had a "crush" on him. The appellant later admitted that he knew D.G. was not at BMS on the date and time of his phone call and that he was simply playing a joke on L.L. The appellant could not provide an explanation as to how he would have reacted if L.L. had gone to BMS that day.

3. The appellant requested a bench trial.

L.L. testified that upon listening to the message on her phone left by the appellant, she became very upset and that the appellant's conduct made her feel "freaky," "scared," "weird," and "terrified." At trial, L.L.'s friends and family also testified that following the phone call L.L. was extremely upset and scared. Moreover, on April 3, 2006, the appellant approached L.L. at her school locker and showed her that he had saved her cell phone number on his cell phone. Following the appellant's phone call to L.L., she reported the incident to her parents and the school counselor who, in turn, informed the school principal.

Thereafter, the school principal commenced an investigation that ultimately led to the May 2, 2007, conviction of the appellant in the Magistrate Court of Harrison County, West Virginia, for the misdemeanor offense of stalking/harassment in violation of W.Va.Code § 61–2–9a(a). The appellant subsequently filed an appeal, and a trial *de novo* was held in the Circuit Court of Harrison County.[3] In an order dated October 3, 2007, the circuit court found the appellant guilty of the offense of stalking/harassment in violation of W.Va.Code § 61–2–9a(a). The circuit court sentenced the appellant to six months incarceration with credit for time served and fined the appellant $500.00. In the same order, the circuit court suspended the appellant's sentence and placed him on unsupervised probation for a period of two years beginning October 3, 2007. This appeal followed.

## II.

## STANDARD OF REVIEW

The appellant argues that the State failed to introduce evidence sufficient to show that he committed the crime of stalking/harassment in violation of W.Va.Code § 61–2–9a(a). When an appellant raises a sufficiency of the evidence argument, this Court follows the standard of review set forth in Syllabus Point 3 of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), which provides that:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

This Court has also stated that:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syllabus Point 1, *Guthrie*.

Furthermore, in Syllabus Point 1, in part, of *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996), the Court held that, "[o]stensible findings of fact, which entail the application of law or constitute legal judgements which transcend ordinary factual determinations, must be reviewed *de novo*." Moreover, "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).

Thus, with these standards in mind, the parties' arguments will be considered.

## III.

## DISCUSSION

The appellant maintains that there was insufficient evidence to support his conviction of stalking/harassment in violation of W.Va. Code § 61–2–9a(a). In particular, he asserts that the circuit court failed to properly apply the law to the facts of this case in concluding that his actions constituted a "following" and "harassment" as provided by the statute. Moreover, the appellant contends that the circuit court failed to view the entirety of the evidence before it and did not consider the context and setting in which the acts occurred. He points out that his alleged misconduct occurred at BMS which enjoys a happy, social, and cordial atmosphere, and he stresses that he had a reputation of being a "jokester/prankster" with students.

The appellant asserts that the allegations against him could have been made by any student at the school and that he treated L.L., in most regards, like any other student. He maintains that he spoke with L.L. about school and non-school related topics in the lunchroom, at her locker, in the hallway, and at school activities. He stated that he would occasionally hug L.L. and that this was a common interaction between students and teachers at BMS. He also argues that the circuit court's finding of fact that he played with L.L.'s hair was clearly erroneous. He admits, however, that: "I flipped her hair, just something like that. It wasn't a stroking or it was just a flip." The appellant maintains that he and L.L. had nothing more than a student-teacher relationship.

With regard to the photographs of L.L. that were hanging on his wall, the appellant contends that it is common for teachers to display photographs of students in their classrooms. He cites the principal's testimony that students often give photographs to teachers with the expectation that they be displayed in their classroom. The appellant further argues that teachers at BMS try to develop a rapport with students and this is

accomplished partly through a display of student pictures.

The appellant also argues that a significant portion of the findings of the circuit court are erroneous because they are based upon the fact that the appellant frequently visited L.L.'s locker. He maintains that the circuit court erred in using this fact to satisfy the "following" requirement of the statute. In that regard, the appellant contends that the circuit court ignored the fact that the appellant's classroom was located in close proximity to L.L.'s locker. He maintains that teachers at BMS are responsible for monitoring the hallways between classes and L.L.'s locker was within the appellant's area of responsibility and, thus, such evidence was insufficient to satisfy the requirements of the statute.

Conversely, the State maintains that every element of W.Va.Code § 61-2-9a(a) was proven beyond a reasonable doubt and that the circuit court's decision is fully supported by the evidence. The State contends the appellant actively followed L.L. by physically traveling to locations where she was present and passively followed L.L. by contacting her on her personal cell phone. The State also argues the evidence indicates that the appellant harassed L.L. repeatedly which, according to L.L., caused her to feel "freaky," "scared," "weird," and "terrified." Moreover, the State asserts that the appellant's constant visits to L.L.'s locker, physical contact with her, calling her personal cell phone on a non-school day, and refusal to remove pictures of her posted in his classroom constitutes harassment as defined in W.Va.Code § 61-2-9a(g)(1). The State further declares that the evidence was more than sufficient to conclude that the appellant sought to establish a personal or social relationship with L.L. Accordingly, the State contends that the circuit court's decision is not clearly erroneous.

Pursuant to W.Va.Code § 61-2-9a(a), a person is guilty of stalking/harassment if he or she willfully and repeatedly follows and harasses a person with whom he or she has or seeks to establish a personal relationship.[4] As previously discussed, "[a] criminal defen-

dant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden." Syllabus Point 3, in part, *Guthrie, supra.* In Syllabus Point 2 of *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996), this Court held:

When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

Upon review of the record, this Court finds that there was sufficient evidence to conclude that the appellant willfully, actively, and repeatedly followed L.L. as required by W.Va.Code § 61-2-9a(a). As previously discussed, soon after meeting L.L., the appellant began visiting her at her school locker everyday throughout the 2005–2006 academic year. Such visits eventually escalated to several encounters between the two during each school day in spite of the fact that L.L. did not invite the appellant to her locker. L.L. stated that she would find the appellant waiting for her in between classes at her locker. The appellant also initiated contact with L.L. in the lunchroom, in the hallway, in her gym class and other classes, and by calling her personal cell phone. There was no evidence to suggest that L.L. ever invited, enticed, or welcomed these repeated daily visits. The circuit court concluded that the acts of the appellant traveling to locations where the victim was present constituted a "following" for the purposes of W.Va.Code § 61-2-9a(a). When viewing all of the evidence and the entire record, this Court does not believe that the findings of the circuit court are clearly erroneous with regard to whether the appellant's actions amounted to a "following." This Court further fails to find error with the

4. *See* note 1, *supra.*

circuit court's finding that the appellant's act of calling L.L. on her personal cell phone and leaving a deceptive message constituted a following. Clearly, the word "follow" under these circumstances necessarily includes conduct engaged in for the purpose of maintaining contact with an individual. Accordingly, the evidence clearly supported the circuit court's finding that the appellant willfully and repeatedly followed L.L.

■ Now we turn to whether there was sufficient evidence to support the circuit court's finding that the appellant willfully and repeatedly harassed L.L. as set forth in W.Va.Code § 61–2–9a(a). The term "harass" is defined in W.Va.Code § 61–2–9a(g)(1) as "willful conduct directed at a specific person which would cause a reasonable person mental injury or emotional distress." At trial, evidence was introduced that showed that the appellant's actions were directed specifically toward L.L., were willful, repeated, and would have caused a reasonable person mental injury or emotional distress. On several occasions, the appellant, a fifty-year-old teacher, placed his arm around L.L., a thirteen-year-old student. He also held her hand, he rubbed her shoulders, and he flipped her hair. He further displayed photographs of her in his classroom in spite of her repeated requests that they be removed. He then called her personal cell phone under false pretenses and left a message that a reasonable person could interpret as an attempt to lure L.L. to the school on a non-school day. The next day at school he showed L.L. that he had saved her phone number on his phone.

With regard to the previously mentioned physical contact by the appellant toward L.L., it was apparent that L.L. was extremely uncomfortable as she stated she gave the appellant "the cold shoulder" and "shrugged" when he placed his arm around her and rubbed her shoulders. Such behavior by L.L. demonstrated that she was disturbed by the appellant's conduct. Moreover, numerous individuals testified that L.L. was well liked, friendly, a good student, respectful of authority, and polite to her teachers. Likewise, testimony of L.L.'s friends and family showed that L.L. became frightened by the appellant's conduct. Accordingly, the circuit court's finding that such repeated physical and non-physical contact by the appellant toward L.L. constituted harassment as per the requirements of W.Va.Code § 61–2–9a(a) is not clearly erroneous.

■ Finally, this Court must determine whether the circuit court correctly concluded that sufficient evidence existed indicating that the appellant had or sought a personal or social relationship with L.L., "whether or not the intention is reciprocated," as required by W.Va.Code § 61–2–9a(a). As previously discussed, during the daily conversations with L.L., most of which the appellant initiated, he would often mention her boyfriend and would state how lucky he was to have her as a girlfriend. He also held L.L.'s hand and had placed his arm around L.L. as they walked in the hallway. He even rubbed her shoulders and touched her hair. Moreover, he hung photographs of L.L. on his classroom wall, he called her personal cell phone on a non-school day, and later showed her that he had stored her phone number on his phone. He often invited L.L. to walk with him prior to school and frequently visited her at her locker, in the lunchroom, and at various locations at BMS. The circuit court determined that such actions were commonly associated with displays of affection and strongly support the conclusion that the appellant sought a personal or social relationship with L.L. In consideration of all of the above, the circuit court's finding that the appellant sought a personal or social relationship with L.L. is not clearly erroneous.

In summary, this Court finds that the evidence was more than sufficient to support the circuit court's determination beyond a reasonable doubt that the appellant was guilty of stalking/harassment in violation of W.Va.Code § 61–2–9a(a). When the evidence is considered in the light most favorable to the prosecution, any rational trier of fact could have found that the appellant followed and harassed L.L. and that he sought to establish a personal or social relationship with her as required under the elements of the statute. In other words, "the [circuit] court's account of the evidence is plausible in light of the record viewed in its entirety [.]"

*Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Therefore, the appellant's conviction must be affirmed.

## IV.

### CONCLUSION

Accordingly, for the reasons stated above, the final order of the Circuit Court of Harrison County entered on November 5, 2007, is affirmed.

Affirmed.