# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 16-0656** (Marshall County 15-F-65, 15-F-66)

**A.C.,**
**Defendant Below, Petitioner**

**FILED**

**May 19, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner A.C.[1], by counsel Jeremiah L. Gardner, appeals his convictions for the offenses of sexual abuse by a parent, guardian, custodian, or person in a position of trust, and first degree sexual abuse. The State of West Virginia, by counsel Benjamin F. Yancey, III, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2015, a Marshall County grand jury indicted petitioner on four counts of sexual abuse by a parent, guardian, custodian, or a person in a position of trust to a child (Counts one through four), and five counts of first degree sexual abuse (Counts five through nine) against M.R., a minor. In a separate indictment, petitioner was charged with one count of sexual abuse by a parent, guardian, custodian or a person in a position of trust to a child, and one count of first degree sexual abuse against M.C., also a minor. Petitioner chose to have both indictments tried together, and was found guilty on all counts in both indictments.

The evidence at trial revealed that in 1995, an Ohio court granted petitioner's wife, C.C., legal custody of M.R., and her brother, J.M.R. C.C. married petitioner in 1998 in West Virginia. The family moved to several states, including Pennsylvania, Georgia, and Ohio. However, M.R.'s school records indicate that from 1997 until 2011, M.R. predominantly resided in

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Marshall County, West Virginia.

M.R. testified that petitioner first sexually abused her when she was eight or nine years old, while living in Pennsylvania. M.R. testified that petitioner and C.C. held her down and that petitioner rubbed her vagina and masturbated. M.R. testified that the first time this occurred she cooperated because she did not know what was going on. M.R. stated that later, she would attempt to fight back, but that C.C. or petitioner would strike her with a fiberglass CB antenna when she did. M.R. testified that this type of abuse continued almost nightly.

In 2003, the family resided in West Virginia, in the Nixon Ridge area of Marshall County. M.R. testified that the abuse continued there, and that from the time she was eleven until she turned twelve, petitioner would rub her vagina, perform oral sex on her, and masturbate. M.R. testified that this occurred every week, or every other week, and on the weeks it occurred, it happened as many as four times per week. M.R. testified that petitioner would tell her, "You're going to be mine;" and that C.C. would often tell her that she was going to be petitioner's wife when she got older.

The family moved to the Taylor's Ridge area of Marshall County, where the abuse continued. M.R. testified that there were a lot of people staying in and out of that home, and as a result the abuse occurred less frequently. M.R. testified that when the abuse occurred it would happen two or three times during one week. M.R. testified that she did not tell anyone because she was scared. M.R. stated that the abuse stopped when she was fifteen, in 2007, and did not start again until she was twenty-three.

In 2007, M.C., petitioner's other victim, moved into petitioner's home with her mother A.B. A.B. was involved in a romantic relationship with petitioner and C.C. A.B. eventually moved out of the home, leaving M.C. in petitioner and C.C.'s care. M.R. testified that she took over most of the duties regarding M.C.'s care, including bathing and grooming, and taking her to school. M.C. testified that petitioner sexually abused her once, in 2015, when she was eight years old, touching her vagina.

In 2015, M.R. testified that she woke and found petitioner touching her vagina. M.R. yelled, and C.C. woke up and yelled for petitioner to stop. After this incident, in March of 2015, M.R. snuck out of the home, and went to a police station and reported the sexual abuse to the Marshall County Sheriff's Department. M.R. also reported that petitioner grabbed her and asked her for a sexual favor, and that when she refused, he slammed her against a wall. Based upon this complaint, petitioner was charged with domestic battery. Days later, M.R. sought and was granted an emergency domestic violence protective order against petitioner.

Detective Zachary Allman of the Marshall County Sheriff's Department investigated the sexual abuse claims. Detective Allman interviewed M.R. at the end of March of 2015, at which time, M.R. disclosed the verbal, physical, and sexual abuse she experienced from petitioner and C.C. Detective Allman also arranged for M.R. to be interviewed at Harmony House, a Child Advocacy Center. M.R. recounted the abuse to a counselor there, in an interview observed by Detective Allman. In April of 2015, Detective Allman interviewed C.C. and petitioner. C.C. denied any abuse. Petitioner initially denied the abuse, but ultimately admitted that

approximately one year before he "did rub [M.R.'s] [vagina] through a blanket." In July of 2015, Detective Allman arrested petitioner for the offense of sexual abuse by a parent guardian or custodian.

After M.R. reported the abuse to the Sheriff's Department, M.C. was removed from the home for her protection, and placed in foster care. In April/May of 2015, M.C. was receiving services from a Court Appointed Special Advocate, Susan Harrison, and disclosed that petitioner sexually abused her when she was living with him. M.C. stated that petitioner touched her vagina. Susan Harrison reported this disclosure to Detective Allman, who interviewed M.C. M.C. disclosed the same to Detective Allman.

Afterward, a Marshall County Grand Jury returned the aforementioned indictments against petitioner. Petitioner's trial took place on May 16-17, 2016. The State and defendant presented witnesses; petitioner did not testify on his own behalf. Petitioner was convicted on all counts.

In May of 2016, in Case No. 15-F-66, where M.C. was listed as the victim, petitioner was sentenced to ten to twenty years in the penitentiary for his conviction of sexual abuse by a guardian, and five to twenty-five years for his conviction of first degree sexual abuse. In Case No. 15-F-65, where M.R. was listed as the victim, petitioner was sentenced to four concurrent terms of ten to twenty years in the penitentiary for his conviction of sexual abuse by a guardian, and four concurrent terms of five to twenty-five years in the penitentiary for his convictions of first degree sexual abuse. Petitioner was sentenced to not less than one year, nor more than five for his conviction of first degree sexual abuse. The sentences for the two convictions were ordered to run consecutively for a total effective sentence of not less than thirty-one years, nor more than ninety-five years in the Division of Corrections. Petitioner now appeals his convictions.

Petitioner asserts four assignments of error.[2] Petitioner complains that the trial court erred in failing to grant his motion for judgment of acquittal and in limiting petitioner's ability to cross-examine M.R. regarding the dismissal of a prior domestic violence protective order. As an initial matter we note,

> [i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484, (2000).

Petitioner first asserts that his motion for judgment of acquittal should have been granted

---

[2] As assignments one through three are a challenge to the sufficiency of the evidence, those matters have been combined in the discussion for clarity and brevity.

because (1) the State failed to prove that the crimes occurred in West Virginia; (2) the State failed to establish the necessary age of the victim;[3] and (3) the State failed to establish that petitioner was a parent, guardian, or custodian of M.R. We have previously held that "[t]he Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla,* 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citing *State v. LaRock,* 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996)). As such, we note the following:

> "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syllabus Point 3, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 1, *State v. Malfregeot,* 224 W. Va. 264, 685 S.E.2d 237 (2009). Upon our review this Court finds no error in the circuit court's denial of petitioner's motion for judgment of acquittal because the evidence was sufficient to support his convictions. Insofar as petitioner argues that the evidence was insufficient to establish that the crimes occurred within Marshall County, and that the victim M.R., was under the age of twelve when the abuse occurred, the Court disagrees.

M.R. gave unequivocal testimony that petitioner sexually abused her in West Virginia. M.R. testified that in 2003, when she was eleven years old, she moved back to West Virginia, and lived in the Nixon Ridge area of Marshall County. M.R. testified further that, during this time, petitioner assaulted her every week, or every other week. M.R. also testified that after the family moved to a home on Taylor's Ridge in Marshall County, West Virginia, petitioner continued to sexually abuse her approximately two to three times per week. M.R. testified that the abuse stopped from the time she was fifteen until she was twenty-three. This evidence clearly establishes that the circuit court had jurisdiction over this criminal matter and that M.R. was younger than twelve when the abuse occurred, as required by West Virginia Code § 61-8B-7(a)(3).

---

[3] Petitioner was indicted for the crime of sexual abuse in the first degree, pursuant to West Virginia Code § 61-8B-7(a)(3), which provides:

(a) A person is guilty of sexual abuse in the first degree when: . . . (3) Such person, being fourteen years old or more, subjects another person to sexual contact who is younger than twelve years old.

Petitioner also complains that there was insufficient evidence to establish that he was a parent, guardian, or custodian of M.R., as contained in West Virginia Code § 61-8D-5(a). Incredibly, petitioner argues that although he was married to M.R.'s legal guardian and that "just because he was working and helping paying the bills," the evidence failed to establish that he was a parent, guardian, or custodian. In the context of West Virginia Code § 61-8D-1(4), a custodian is defined as,

> a person over the age of fourteen years who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding. "**Custodian" shall also include, but not be limited to, the spouse of a parent, guardian or custodian, or a person cohabiting with a parent, guardian or custodian in the relationship of husband and wife, where such spouse or other person shares actual physical possession or care and custody of a child with the parent, guardian or custodian.**

W. Va. Code § 61-8D-1(4), in pertinent part, (emphasis added). The record is clear that M.R. was placed in C.C.'s legal custody in 1995, and that petitioner and C.C. married in 1998. After their marriage, petitioner and C.C. lived together with M.R. M.R. testified at trial that she referred to petitioner as "dad", and that she viewed C.C. and petitioner as parental figures, who told her "what [she was] and [wasn't] allowed to do."

We have previously held that "'[t]he jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses.' Syl. Pt. 2, *State v. Bailey,* 151 W.Va. 796, 155 S.E.2d 850 (1967)." Syl. Pt. 2, *State v. Martin,* 224 W. Va. 577, 687 S.E.2d 360 (2009). Based upon the evidence presented, the jury found that petitioner was a custodian of M.R. Upon our review of the evidence presented below, we find there was ample evidence from which the jury could make this conclusion, and find that the evidence was sufficient to support petitioner's convictions.

Petitioner also argues that the trial court erred in denying him the right to fully cross-examine M.R. regarding prior domestic violence allegations made by M.R against petitioner. Petitioner asserts that because "the majority of this case hinged upon the testimony of M.R.," petitioner should have been given the opportunity to directly question M.R. regarding her motive, bias, and inconsistent prior statements. The State counters that during trial, it introduced the video of M.R.'s police interview, in which the domestic battery charge is briefly mentioned. At that time, petitioner's counsel moved to cross-examine the officer on the issue. The court denied that motion, finding that the reference to the domestic violence protective order was very slight. However, the court also informed petitioner that, depending upon the substance of M.R.'s testimony, petitioner may be afforded the opportunity to cross-examine M.R. on the domestic battery charge. The State asserts further that "petitioner never brought the issue back up," and is now barred from raising it on appeal.

We agree with the State and find that petitioner fails to show that the circuit court erred in denying petitioner's request at trial. As an initial matter, petitioner's brief fails to include proper citations to the record, and notably, fails to cite to any objection to a request by petitioner for

further cross examination of M.R. regarding the domestic violence allegations. Pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, in pertinent part,

> [an] argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Further,

> One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result in the imposition of a procedural bar to an appeal of that issue. Our cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights. Recently, we stated in *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996): "The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace." (Citation omitted). When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time.

*State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996) (internal citations omitted). Accordingly, we find that petitioner did not properly preserve this error on appeal, and decline to grant petitioner relief on this ground.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 19, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker